VICENTE SOLTERO, JR., Plaintiff and Appellant, *v.* IGNACIO ROCA BACÓ ET AL., Defendants and Appellees.

No. 7185. Argued January 13, 1937.—Decided April 9, 1937.

*Rafael Soltero Peralta* for appellant.   *Agustín E. Font* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an injunction proceeding. The first document appearing in the record is the amended petition dated August 10, 1934. The date on which the original petition was filed does not appear. Then follows a rule to show cause issued by the court on July 11, 1934. Then a restraining order

issued by the clerk on the same day. It does not appear how or when it was served. Then follow three documents of the defendants, dated August 8, 1934, and served on the 10th, to wit: a motion to strike, a demurrer, and the answer. Then the statement of the case and opinion and the judg- ment of the court, the notice of appeal, and the authentica tion certificate.

Such is the judgment roll filed. The statement of the case begins by reciting that the trial was set for August 8, 1934, and was postponed to the 10th; that "at the commencement of the hearing, the defendants moved to open the default, and the court granted the motion in the exercise of its discretionary power"; that the defendants then filed their pleadings and as the parties announced that they were ready, the trial began. The evidence of the plaintiff is described as consisting of a letter dated June 23, 1934, from the defend- ant Treasurer to the municipal plumber ordering him to discontinue the water service to the house of the plaintiff, five receipts for water service, a letter from the Treasurer to the plaintiff, dated July 5, 1934, in reply to one of the plaintiff and inclosing a printed form or application for water service with a promise to comply with the municipal ordinances regarding said service, the blank form, a certificate of the Secretary of the Public Service Commission, dated July 20, 1934, stating that the water schedule of Yauco has not been approved by the Commission, section 6 of Health Reg- ulations No. 14, a medical certificate showing that the plain- tiff suffers from heart trouble, a copy of the municipal ordinance fixing the water rates approved in 1912, and the testimony of the plaintiff and of Félix González and Carlos Becerra; and that of the defendants as consisting of the testi- mony of Francisco Antongiorgi and Ignacio Roca Bacó.

In the statement of the case and opinion the trial judge stated that—

"Both parties stipulated the submission of the permanent injunc- tion upon the same evidence introduced for the preliminary injunc-

tion; so that the court could decide at the same time the case on the merits. Said stipulation was approved by the court."

It went on to declare as proved the following facts:

"The plaintiff, Vicente Soltero, Jr., is a property owner and resident of the Municipality of Yauco, and a consumer of water from the aqueduct of the said municipality.

"On June 23, 1934, the water service to the plaintiff's residence was discontinued by order of the municipal treasurer that is, by order of the defendant Carlos Becerra.

"The assistant tax collector of the municipality, Francisco Antongiorgi, on several occasions, each quarter, tried to collect from plaintiff Soltero the amount due on the water service, and he failed to pay it, for which reason his water supply from the aqueduct of Yauco was cut off.

"The plaintiff introduced in evidence a certified copy of an ordinance 'fixing the rates for water service from the aqueduct of Yauco' for the year 1912–1913, and for the following years, sections 13 and 17 thereof reading as follows:

" 'Section 13 a.—The payments for the water service will be made quarterly in advance, during the first 15 days of the months of July, October, January and April of each year, but the consumer will pay for the entire month in which the connection to the water pipes is made, whichever the day may be on which said connection is made, and for the remaining months to the end of the respective quarter.'

" 'Section 17 a.—The failure to make prompt payment shall be sufficient ground for the discontinuance of the service without previous notice, and if the default lasts more than 15 days, the connection of the private pipe with the public pipe line will be taken off, and closed.'

"The plaintiff has not presented in evidence the ordinance regarding the use of water which he alleges is in force in Yauco since the year 1924, and, therefore, it has not been possible for the court to ascertain all the provisions of the same.

"But from the testimony of the assistant collector Francisco Antongiorgi the court infers that sections 13 and 17 copied above are in force and that the water service must be paid quarterly and in advance.

"It appears proved that plaintiff Soltero paid without protest the sum of $12.00 annually for water service, on the following dates: July 14, 1931, July 1, 1932, and June 30, 1933, as evidenced by the receipts introduced in evidence by the plaintiff himself.

"The first receipt for water service paid by the plaintiff under protest was the receipt paid on July 5 (*sic*), 1934 (admitted in evidence and offered also by the plaintiff).

"The said receipt corresponded (*sic*) to the fiscal year 1933–1934, which began on July 1, 1933, and ended on June 30, 1934.

"The annual payment which comprised said receipt was already overdue on June 23, 1934 (the day on which the water supply to plaintiff was discontinued), if the water service was to be paid quarterly and in advance.

"The plaintiff paid under protest for the first time on July 5 (*sic*), 1934, that is, after the water service had been discontinued.

"There is another receipt paid under protest on August 10, 1934, which corresponded to the first quarter of the fiscal year 1934–1935 . . .

"It appears clearly proved that plaintiff Soltero paid without protest during several consecutive years the charges for water service ($12 annually) in accordance with the schedule which he now claims (paragraph sixth of the complaint) to be illegal, on the ground that the same has not been approved by the Public Service Commission."

And upon those facts the court reached the following conclusions:

"When the plaintiff made those payments without any protest whatsoever, he admitted *ipso facto* the validity of the said schedule, and, therefore, the validity of the ordinance relating to the aqueduct which now he attempts to impeach.

"     *     *     *     *     *     *     *

"And as the complaint for a permanent injunction and the petition for a preliminary injunction filed by the plaintiff are based on the allegation that the ordinance relating to the aqueduct of Yauco is illegal, and as the plaintiff is estopped to impeach the ordinance which he by his own acts repeatedly, year after year, admitted to be valid, the court reaches the conclusion that the complaint for a permanent injunction must be denied in all its parts and likewise the petition for a preliminary injunction; all this without special imposition of costs."

Feeling aggrieved by that judgment, the plaintiff took the present appeal and he has assigned seven errors as committed by the district court.

■■ In the first assignment of error he maintains that the court erred in opening the default. All that appears in the record on this point is what we have stated, that is, that the court in the exercise of its discretion and on motion of the defendants opened the default. It does not appear that the plaintiff took any exception, nor even that he objected. It does not appear when, how, or why was the default entered. In these circumstances, what basis is there to maintain that the court abused its discretion?

Citing no law or decision, the appellant maintains that the motion to open the default should have been made in writing for the purpose of enabling the court to act legally. We agree that it would have been a better practice to file in writing a motion of the character involved herein, but the fact that the same was made and decided orally, in view of the attendant circumstances, constitutes no ground for a reversal of the judgment.

■ The second and third assignments relate to the weighing of the evidence. As we know, the court concluded that the payment for water service was required of the plaintiff quarterly, and that the plaintiff paid under protest only on July 3 and August 10, 1934. In order to reach such a conclusion, the court gave credit to the testimony of Antongiorgi and rejected that of the plaintiff. Thus it decided a conflict in the evidence in the exercise of its discretion, and although the contention of the appellant regarding the first particular, that is, the quarterly collection, has some force, we are not convinced that the district court committed manifest error, or that it acted under the influence of passion, prejudice, or bias.

■■ The fourth and fifth errors relate to the ground on which the court denied the petition, to wit, the application of the doctrine of estoppel.

We are inclined to think that the appellant is right. He has no right to claim under the previous payments, but the fact that he made such payments without protest does not

bind him to continue obeying an ordinance which he regards as void. His right to raise the question of its nullity at the present time is clear.

Now, as those errors only relate to the grounds for the court's decision, if the latter can be sustained on other grounds, a reversal of the judgment would not be proper. This compels us to go into a further discussion of the case.

The ground for nullity alleged is that the ordinance was not approved by the Public Service Commission. In the brief of the appellant it is textually said:

". . . It is a fact established in the lower court that the ordinance of 1924, fixing the water service rates in Yauco, which substituted the rate of $12.00 for that of $6.00 imposed by the ordinance of 1912 of $\frac{1}{4}$-inch water pipes, such as the ones used by the petitioner, had not been approved by the Public Service Commission of Puerto Rico, and for this reason it was void, as it appears from section 3, letter E and section 24 of the Public Service Act, which read as follows:

" 'Section 3.—It shall be the duty of every public-service company . . . . to make no change in any tariff or time-table, without the previous approval of the commission.

" ' *      *      *      *      *      *      *

" 'Section 24.— . . . That no rates shall become effective until published as herein provided and approved by the commission.'

"The evidence to prove the above assertion is found in a certificate of the Secretary of the Public Service Commission, stating that the Public Service Commission has not approved said ordinance of 1924, nor any other ordinance, tariff, or regulation of the aqueduct of the Municipality of Yauco. (Exhibit E, Statement of the Case.) If we take into consideration that the Public Service Commission was created in 1917 by our Organic Act, and that up to this time no ordinance or tariff has been approved by said Commission, amending in any form whatsoever the tariff approved in 1912, it may easily be inferred that the only tariff legally in force is that of 1912."

The difficulty in deciding the question thus raised is that the ordinance attacked by the plaintiff was not introduced in evidence by him. On the other hand, as the validity of the original ordinance was admitted, and in relation to such ordinance there appears in the statement of the case only that

the same fixed "at $6 annually the charges to be paid by the consumers of water in Yauco with a water service through a ¼-inch pipe," and as it does not appear alleged or proved what was the diameter of the pipe line through which the water service was given to the plaintiff's house, what basis is there to conclude that the amount collected from him had not been computed in accordance with the ordinance the validity of which has been admitted? None, in our judgment.

The sixth assignment of error relates to the difficult position of the municipality because of its failure to comply with the provisions of section 6 of the Health Regulations No. 14, which, according to the statement of the case reads as follows:

"When the municipality is compelled to discontinue the water service to any house or building because of failure to pay the charges for water service, said municipality will file with the Health Director a list of the consumers in default prior to discontinuing the service, specifying their names, residences, and amounts due . . ."

Testifying at the trial, the defendant Treasurer admitted that said provision of the regulations had not been complied with. Did that render the action of the municipality illegal?

The district court did not deal with this question in the statement of the case and opinion; the appellant confined himself to raising the question in his brief without duly arguing the same and without citing any authorities; the appellees said nothing in their brief on this point.

There is no question as to the wisdom of the provision in view of the intimate relation existing between current water and the sanitary problem, but we feel inclined to consider the provision as directive rather than mandatory and, therefore, the failure to comply therewith does not produce the absolute nullity of the action taken.

The seventh and last assignment of error relates to the dates of the discontinuance of the water service—June 23,

1934—and of the resumption thereof—July 11, 1934—as showing the illegal action of the municipality.

The appellant is not right. On June 23, the plaintiff was owing not only for the water that he had consumed during the last quarter of the fiscal year 1933–34, but also for the consumption during the whole year. He was notified and warned, but he failed to pay. The discontinuance of the service was authorized by the ordinance.

The service was reestablished on July 11, when the plaintiff had not as yet paid for the first quarter of the fiscal year 1934–35. He paid on August 10, 1934. Of what can he complain? It was a new connection. By paying on July 3, what the plaintiff did was to settle his debt for the previous years.

The judgment is, therefore, sustained because from the record it does not appear in a clear and definite manner that the action of the municipality was illegal; and it may perhaps be advisable to add that after examining the testimony given by the plaintiff to show that he had suffered damages in the amount of $5,000, his statements appear so exaggerated that really they do not incline in his favor the judicial conscience.

The appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.